IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BILLY J. MILLER, #666676 | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv161 |
| KEN KUYKENDALL, ET AL. | § | |

MEMORANDUM OPINION
AND ORDER OF PARTIAL DISMISSAL

Plaintiff Billy J. Miller, an inmate confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on April 9, 2007. The Plaintiff complained about the medical care he had received for diabetes. On August 9, 2007, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified as to the basis of his claims. Regional Grievance Coordinator Chip Satterwhite, Assistant Warden Wesley Pratt and Nurse Barbara Hughes testified under oath regarding prison policies and information contained in the Plaintiff's prison records.

The Plaintiff stated that he has been a Type I insulin dependent diabetic for more than ten years. He has been in Chronic Care since he was diagnosed as a Type I insulin dependent diabetic. In early 2006, he decided to stop eating breakfast in an effort to bring his blood sugar levels down. He noted that his blood sugar levels rose to unsafe levels when he ate breakfast. He informed Dr.

Kuykendall that he would no longer be eating breakfast or taking the fingerstick/glucose level test at breakfast. On February 3, 2006, Dr. Kuykendall responded by ordering medical personnel to cease administering insulin or other diabetic needs to the Plaintiff. He also removed the Plaintiff's medical restrictions. The Plaintiff testified that Dr. Kuykendall stopped his access to insulin as punishment. He further testified that Dr. Kuykendall, as a doctor and a diabetic, knew that he would die without insulin. After dinner on February 4, 2006, the Plaintiff received a glucose test which read 400+ out of a maximum on the meter of 500. Nurse Seclar informed the Plaintiff about Dr. Kuykendall's instructions, but she gave him insulin anyway saying that he was not going to die on her hands. On February 5, 2006, after dinner, his glucose test was over 500, but Nurse Seliga would not give him insulin due to Dr. Kuykendall's instructions. Seliga made the Plaintiff leave the infirmary. The Plaintiff complained to Lt. Lamb who told the Plaintiff to come back after shift change at 6 p.m.. After shift change, Lt. Lamb escorted the Plaintiff to the infirmary. A nurse on duty contacted the "on call Physician," who issued an order to give the Plaintiff insulin. On February 6, 2006, the Plaintiff went to the infirmary after dinner. His glucose test was over 500, but Nurse Pritchett refused to give him insulin and refused to contact the "on call physician." He had no insulin on that day. The Plaintiff testified that the nurses have a protocol to contact the on-call physician when a glucose test is over 500, but Nurse Pritchett would not make the call. On February 7, 2006, Nurse Pritchett offered to give him a glucose test, but she again noted she was not permitted to give him insulin. The Plaintiff complained to Lt. Asbury, who called the infirmary. After calling the infirmary, Lt. Asbury told him she could "do nothing about it." Captain Walker refused to talk to him.

On Wednesday, February 8, 2006, the Plaintiff began to vomit and lose consciousness. He was rushed to Palestine Regional Medical Center where he was admitted to intensive care. He was treated for severe dehydration and ketoacidosis. The attending doctor told him that he was hours from a diabetic coma and/or death. The Plaintiff was kept at the hospital for 52 hours. He testified that arrived at the hospital on Wednesday morning around 8 or 9 a.m. and was released on Friday evening around 6 or 7 p.m. He complained that he was kept in a four-point restraint the entire time he was in the hospital. Captain Noah Walker refused to have the restraints removed. He testified that the four-point restraints kept him in handcuffs that were attached to a belt and cuffs around his ankles that were also attached to the belt. The Plaintiff noted that this situation forced him to urinate and defecate on himself.

Warden Wesley Pratt testified under oath that inmates are encouraged to talk to supervisory personnel about problems. It was appropriate for the Plaintiff to ask Lt. Asbury for help. He expressed the opinion that Lt Asbury's response of calling the infirmary and then telling the Plaintiff that she could not do anything in light of Dr. Kuykendall's orders was appropriate. Captain Walker's actions at that time were appropriate since he was standing by Lt. Asbury. He noted that security personnel cannot override medical personnel.

Nurse Barbara Hughes testified under oath that diabetics can tell when their blood sugar is too low due to shaking, sweating and confusion. It is harder to tell when blood sugar levels are too high, but symptoms include being excessively hungry or thirsty and frequent urination. Diabetics are encouraged to routinely have their blood sugar levels checked. She added that it is not unusual for diabetics to forego an insulin shot when their blood sugar level is normal at the time it is tested.

Chip Satterwhite testified under oath that the grievance records reveal that the Plaintiff had exhausted his administrative remedies against Dr. Kuykendall and Captain Walker. The Court notes that federal law requires inmates to exhaust their administrative remedies before filing a lawsuit under 42 U.S.C. § 1997e, although the Supreme Court requires the issue to be raised as an affirmative defense, as opposed to *sua sponte*. *Jones v. Bock*, 127 S.Ct. 910, 920-21 (2007).

The Plaintiff reiterated that he did not want to take insulin in the mornings because his blood sugar levels were already low. He gave the Court permission to review his prison records.

The Plaintiff's classification records reveal that the Plaintiff filed a Step 1 grievance against Dr. Kuykendall on February 6, 2006, which was two days before he was rushed to the hospital. He specifically complained that Dr. Kuykendall was denying him insulin, which could result in his death. The following response came from Dr. Kuykendall: "You were a 'no show' for three consecutive efforts to evaluate you in Chronic Clinic and a 'no show' for two consecutive efforts to get the lab work needed for your case. You were 'no show' twenty-four (24) times in January for your morning insulin. I am not going to treat you for your problems until you indicate you are willing to participate with the care offered." The response to the Plaintiff's Step 2 grievance noted that T.D.C.J. may not override the health care provider's clinical decisions.

The Plaintiff's medical records reveal that he had been prescribed Humulin 70/30 with 35 units in the morning and 35 units in the evenings. The medical records included pages of Diabetic Flow Sheets documenting when the Plaintiff was supposed to receive shots and when he actually received them. Throughout January, 2006, it was recorded that he was a "no show" for his morning injection. Nurse Seliga noted that his blood sugar level was 551 at 4:20 p.m. on February 5, 2006, but the Plaintiff was not given a dose. At 6:50 p.m., the Plaintiff returned to the infirmary, and

Physicians Assistant Nolen authorized a dose. Another dose was administered at 4:10 a.m. Nurse Pritchett listed him as a "no show" on February 6, 2006. She listed him as being off of the Coffield Unit during the evenings of February 8 and 9, 2006. On February 8, 2006, Nurse Burns noted the Plaintiff's need for emergency care. The Plaintiff was characterized as diabetic ketoacidosis, and he was rushed to Palestine Regional Medical Center. The Diabetic Flow Sheet reveals that doses were resumed starting on February 11, 2006. Dr. Orig signed the order resuming the insulin. The recent Diabetic Flow Sheets reveal that he is receiving one dose every afternoon around 4-5 p.m.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429

U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d at 1238.

In the present case, the Plaintiff has alleged facts that support an inference that Dr. Kuykendall was deliberately indifferent to his serious medical needs. He should be required to answer the claims made against him. On the other hand, Nurse Pritchett, Nurse Seliga, Captain Walker and Lt. Asbury were sued because they followed Dr. Kuykendall's instructions in denying him care. The Plaintiff would have a basis for a deliberate indifference claim against them if they had knowingly disregarded instructions by medical personnel to his detriment. *Jackson v. Cain*, 864 F.2d at 1246. However, the fact that they followed Dr. Kuykendall's instructions at worst may have amounted to an incorrect decision, but it did not rise to the level of deliberate indifference. *See Montoya-Ortiz v. Brown*, 154 Fed. Appx. 437, 439 (5th Cir. 2005).

The Plaintiff sued Warden Keith Moore because he is responsible for the operations at the Coffield Unit. He was not personally involved in denying the Plaintiff insulin. In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Warden Moore did not participate in any alleged acts of misconduct. The only way he could possibly be implicated in these claims is through his supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability

theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied.

Finally, the Plaintiff sued Captain Noah Walker for forcing him to remain in a four-point restraint the entire time he was hospitalized. Such facts give rise to a possible excessive use of force claim against Captain Walker. *See Dominguez v. Moore*, 149 Fed. Appx. 281 (5th Cir. 2005).

In conclusion, the Plaintiff should be permitted to proceed with his deliberate indifference claim against Dr. Ken Kuykendall and his excessive use of force claim against Captain Noah Walker. The remaining claims fail to state a claim upon which relief may be granted and are frivolous in law and fact and should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the Plaintiff may proceed with his deliberate indifference to serious medical need claim against Dr. Ken Kuykendall and excessive use of force claim against Captain Noah Walker. It is further

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **16** day of **August, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE